**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| JABLONKA PLASTIC SURGERY, LLC<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM HEALTH PLANS OF VIRGINIA, INC., D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD; HEALTHKEEPERS, INC. d/b/a Anthem HealthKeepers; ANTHEM INSURANCE COMPANIES, INC.; and ELEVANCE HEALTH, INC.,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff, Jablonka Plastic Surgery, LLC ("JPS"), submits the following Complaint against Defendants Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield; HealthKeepers, Inc., d/b/a Anthem HealthKeepers; Anthem Insurance Companies, Inc.; and Elevance Health, Inc. (collectively, "Anthem"), and asks this Court to confirm and enter judgment upon binding independent dispute resolution ("IDR") determinations issued in favor of JPS under the No Surprises Act ("NSA"), 42 U.S.C. § 300gg-111, and its implementing regulations, 45 C.F.R. §§ 149.120, 149.420, and 149.510 (the "Awards"), that are unpaid and overdue. True and correct copies of the Awards at issue in the case are attached as Exhibit 1.

## INTRODUCTION

1. This case concerns Defendants' violation of the NSA and refusal to pay final, binding federal IDR Awards for medically necessary reconstructive surgeries that were all furnished to patients after mastectomy, lumpectomy, and other invasive breast cancer treatment. The services

were complex reconstructive procedures performed to restore anatomy altered by cancer surgery and to mitigate the lasting physical and psychological consequences of breast cancer and its invasive treatment.

2. JPS is a local and independent, physician-led plastic and reconstructive surgery practice serving the Hampton Roads community. It is led by Eric M. Jablonka, M.D., a plastic and reconstructive microvascular surgeon certified by the American Board of Plastic Surgery and fellowship-trained in microvascular breast reconstructive surgery. The medical services that underlie the IDR Awards were provided by Dr. Jablonka and his clinical team.

3. The merits of the payment disputes have already been fully resolved and reduced to binding IDR Awards in JPS's favor. Each of the Awards at issue was the result of IDR proceedings under the NSA. In each proceeding, a certified IDR entity ("CIDRE") issued a written determination awarding reimbursement to JPS from Defendants for medical services already furnished.

4. As part of its response in each IDR proceeding, Anthem affirmatively attested through the federal IDR portal operated by the Centers for Medicare & Medicaid Services ("CMS") that it agreed to "[p]ay the outstanding amount (if any) of the out-of-network rate that is my responsibility as determined by the certified IDR entity." Anthem also attested that it understood "the final payment determination made by the certified IDR entity is binding upon the parties and not subject to judicial review except under certain limited circumstances." Ex. 3 at 16, 20. Anthem nevertheless has refused to do what it expressly told CMS it would do.

5. Anthem's express commitment accords with the NSA's mandatory terms. The statute provides that IDR Awards "shall be binding upon the parties involved," 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), and that payment "shall be made directly to the nonparticipating provider . . . not later than 30 days after the date on which such determination is made," *id.* § 300gg-111(c)(6).[1] Although the NSA gives a losing party limited grounds to challenge an IDR Award, Anthem has not successfully challenged any Award at issue here.

6. The thirty-day payment deadlines have all long passed, and the Awards are all unpaid and overdue. JPS is entitled to its withheld payment immediately.

7. Defendants accepted the benefits of the statutory framework by insulating their members and beneficiaries from balance-billing exposure. Having repeatedly lost in the IDR process, Defendants now seek to improperly retain those benefits while disregarding the corresponding payment obligations Congress imposed.

8. Defendants' refusal to honor the final, binding IDR Awards shifts the cost of completed cancer care to the local medical practice that furnished it, even though Defendants are part of a national health-insurance enterprise serving approximately 44.9 million medical members as of June 30, 2026.

[1] Congress enacted substantively parallel NSA requirements in the Public Health Service Act, ERISA, and the Internal Revenue Code. The provisions requiring IDR determinations to be binding and payment to be made within 30 days are codified at 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), (c)(6); 29 U.S.C. § 1185e(c)(5)(E)(i)(I), (c)(6); and 26 U.S.C. § 9816(c)(5)(E)(i)(I), (c)(6). JPS does not assert a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). It seeks enforcement of the separate statutory obligation to pay final, binding IDR Awards issued in JPS's favor. Because the NSA directs payment of the amount determined through IDR to the nonparticipating provider, JPS's claim does not depend on derivative standing under ERISA or an assignment of benefits from a patient.

9. Two recent decisions from the District of Maryland considering unpaid IDR awards under the same statutory payment obligation have held that "the No Surprises Act impliedly authorizes a very narrow private right of action to convert a 'binding' IDR determination to a judgment if the obligated party does not comply with its statutory payment obligation." *PHI Health, LLC v. Optimum Choice, Inc.*, No. 25-cv-2320, 2026 U.S. Dist. LEXIS 65382, at *32 (D. Md. Mar. 27, 2026); *SpecialtyCare, Inc. v. CareFirst of Md., Inc.*, No. 25-cv-130, 2026 U.S. Dist. LEXIS 126761, at *4-5 (D. Md. June 9, 2026) (same).

10. This action does not seek judicial review of the payment disputes or the Awards themselves. It seeks only to give practical effect to final, binding Awards by converting them into enforceable judgments.

11. JPS asks this Court to confirm the final, binding IDR Awards, convert them into judgments against Defendants, order immediate payment of any outstanding portion of the Awards, and grant JPS all applicable damages, prejudgment and postjudgment interest, costs, fees, and other relief available under law.

## PARTIES

12. JPS is a Virginia limited liability company with its principal place of business in the Eastern District of Virginia at 2829 Shore Drive, Suite 200, Virginia Beach, Virginia. JPS also provides services from 1401 Kristina Way, Suite 104, Chesapeake, Virginia.

13. Defendant Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield, is licensed to transact health insurance in Virginia. It is incorporated in the Commonwealth of Virginia and maintains a principal place of business at 2015 Staples Mill Road, Richmond, Virginia 23230.

14. Defendant HealthKeepers, Inc., d/b/a Anthem HealthKeepers is licensed as a health maintenance organization in Virginia. It is incorporated in the Commonwealth of Virginia and maintains a principal place of business at 2015 Staples Mill Road, Richmond, Virginia 23230.

15. Defendant Anthem Insurance Companies, Inc. is an Indiana corporation and the owner of the Anthem trade name and trademark. On information and belief, Anthem Insurance Companies, Inc. participates in, controls, benefits from, or is responsible for the claims administration, payment practices, trade-name operations, and/or payment obligations at issue.

16. Defendant Elevance Health, Inc. (formerly known as Anthem, Inc.) is an Indiana corporation with its principal place of business at 220 Virginia Avenue, Indianapolis, Indiana 46204.

17. Elevance is one of the largest health insurers in the United States in terms of medical membership, serving approximately 44.9 million medical members as of June 30, 2026.

18. Relevant to this action, Anthem Health Plans of Virginia, Inc. and HealthKeepers, Inc. are independent licensees of the Blue Cross and Blue Shield Association. They are affiliates of Elevance, whose affiliated health plans operate under Blue Cross and Blue Shield licenses across fourteen states, including Virginia.

19. At all relevant times, Defendants acted directly and through their subsidiaries, affiliates, trade names, agents, claims administrators, employees, and representatives in connection with the claims, IDR proceedings, Awards, and payment obligations at issue.

20. Each Award identifies Anthem Blue Cross and Blue Shield as the payor responsible for payment. Anthem Blue Cross and Blue Shield is the trade name under which Anthem Health Plans of Virginia, Inc. operates. Through the corporate, claims-administration, and payment relationships alleged above, the remaining Defendants are also legally responsible for the payment

obligations incurred under that name. JPS therefore seeks enforcement of all 23 Awards against all Defendants.

## JURISDICTION AND VENUE

21. Jurisdiction of this Court is proper under 28 U.S.C. § 1331 because this action arises under the No Surprises Act, including 42 U.S.C. § 300gg-111.

22. This Court has personal jurisdiction over Anthem Health Plans of Virginia and HealthKeepers because they are Virginia corporations headquartered in Richmond and regularly conduct business in Virginia. The remaining Defendants have purposefully directed the claims-administration, IDR, and payment conduct at issue toward Virginia and acted through their Virginia affiliates and agents.

23. Venue is proper in the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts complained of occurred within this District. Defendants reside and conduct substantial business here, and, on information and belief, the administration, processing, and decisions regarding nonpayment of the claims and IDR Awards occurred in this District.

24. The Richmond Division is the proper division under Local Civil Rule 3(C) because Anthem Health Plans of Virginia and HealthKeepers maintain their principal places of business in Richmond and, on information and belief, the relevant claims-administration, payment-processing, and nonpayment decisions occurred in the Richmond Division.

## FACTUAL ALLEGATIONS

### A. Dr. Jablonka and His Local, Independent Reconstructive Microsurgery Practice

25. JPS is a local, independent, physician-led plastic and reconstructive surgery practice serving the Hampton Roads community. It provides advanced implant-based and tissue-based

breast reconstruction for patients undergoing lumpectomy, mastectomy, or risk-reducing surgery related to breast cancer and receives referrals from breast cancer surgeons throughout the region.

26. JPS is led by Eric M. Jablonka, M.D., a plastic and reconstructive surgeon certified by the American Board of Plastic Surgery and fellowship-trained in microvascular breast reconstruction at the University of Pennsylvania. He previously served as an Assistant Professor of Plastic Surgery at the University of Pennsylvania Health System and as a microvascular breast reconstructive surgeon in the Penn Medicine/Virtua Health Breast Cancer Program. He currently serves as an Assistant Professor of Plastic Surgery and a member of the Community Faculty at Eastern Virginia Medical School at Old Dominion University, where he trains senior and chief plastic surgery residents in complex microsurgical breast reconstruction. He also serves as Co-Chair of the Breast Cancer and Reconstruction Committee for the Breast Cancer Programs at Sentara Virginia Beach General Hospital and Sentara Princess Anne Hospital.

27. JPS's clinical team includes five plastic surgeons and two surgical physician assistants. The services underlying the Awards were furnished by Dr. Jablonka and a specialized team that included Joshua Henderson, M.D., Tamara Kemp, M.D., and Ashley Walker, PA-C. Dr. Kemp is a board-certified plastic surgeon specializing in complex breast reconstruction; Dr. Henderson is a board-eligible plastic surgeon fellowship-trained in microsurgery; and Ms. Walker is a nationally certified physician assistant with specialized experience in complex microvascular and reconstructive surgery.

28. The services at issue included deep inferior epigastric perforator ("DIEP") flap breast reconstructions, highly complex microsurgical procedures in which living tissue is transferred from the abdomen to reconstruct one or both breasts. These procedures typically require eight to

twelve hours of operating-room time, two microsurgeons and one or more surgical assistants, close postoperative monitoring, and a highly coordinated and experienced surgical team.

29. JPS furnished these services at Sentara Princess Anne Hospital and other Hampton Roads facilities, including Chesapeake Regional Medical Center, to breast cancer patients enrolled in health plans issued or administered by Defendants. The applicable plans covered the services, and the resulting Awards arose from covered out-of-network care governed by the NSA.

30. JPS is the only practice in Hampton Roads offering the full breadth of breast cancer reconstruction, and some of the highly specialized services at issue are not available from any other practice in the area. Anthem provides its members no nearby in-network coverage for those services. For Anthem members who need those particular services, obtaining them locally therefore necessarily means receiving out-of-network care. Although JPS has periodically sought to negotiate an in-network agreement with Anthem, the parties have not reached one.

31. Because the NSA prohibits JPS from balance billing these patients, Defendants' refusal to pay the amounts fixed by binding federal IDR Awards forces JPS to absorb Defendants' share of the cost of complex cancer care furnished to their own members and threatens JPS's ability to continue providing these highly specialized services.

**B. <u>Introduction to the No Surprises Act</u>**

32. In 2020, Congress enacted the NSA in response to concerns that too many patients were receiving unexpectedly high medical bills for emergency services furnished by out-of-network providers, services furnished by out-of-network providers at in-network facilities, or air ambulance services.

33. In pertinent part, the NSA limits patient cost sharing for covered out-of-network care and prohibits providers from balance billing patients beyond the cost-sharing amount permitted by federal

law. Congress paired those protections with the IDR process to determine the out-of-network rate and required payment of the resulting amount within 30 days.

34. The Departments of Labor ("DOL"), Health and Human Services ("HHS"), and the Treasury jointly administer the federal IDR process; public-enforcement responsibility varies with the type of plan or coverage.

35. When a provider submits a claim for out-of-network services subject to the NSA, the health plan must make an initial payment or issue a notice of denial of payment within 30 calendar days. 42 U.S.C. § 300gg-111(b)(1)(C).

36. If a provider disputes a denial or initial payment, the provider may give notice and initiate open negotiations for higher reimbursement. 42 U.S.C. § 300gg-111(c)(1)(A); 45 C.F.R. § 149.510(b)(1)(i). That notice begins a separate 30-business-day period (the "Open Negotiation Period"), during which the provider and the plan attempt to agree on the amount of payment for the item or service.

37. If open negotiations are unsuccessful, the formal IDR process can be initiated within four business days after the Open Negotiation Period expires. 42 U.S.C. § 300gg-111(c)(1)(B); 45 C.F.R. § 149.510(b)(2)(i).

38. Using the federal IDR portal, the provider submits a Notice of Independent Dispute Resolution Initiation Form. CMS User Guide, *Notice of Independent Dispute Resolution (IDR) Initiation Web Form* 4 (Oct. 2025), attached as Exhibit 2. The provider must answer a series of questions to confirm eligibility for the payment dispute process (*id.* at 7) and make the following attestation: "(We), the undersigned initiating party (or representative of the initiating party), attest that to the best of my knowledge the . . . service(s) at issue are qualified IDR item(s) and/or service(s) within the scope of the Federal IDR process" (*id.* at 21). The provider also identifies a preferred CIDRE and affirms the entity has no conflict of interest. *Id.* at 21-22.

39. Upon notification, the health plan responds to the IDR initiation and proposed CIDRE through the IDR portal and must attest to the following:

> I agree to:
>
> - Pay the administrative fee.
> - Pay the IDR entity fee if my dispute is found eligible for the IDR process.
> - Pay the outstanding amount (if any) of the out-of-network rate that is my responsibility as determined by the certified IDR entity.
> - I also understand that the final payment determination made by the certified IDR entity is binding upon the parties and not subject to judicial review except under certain limited circumstances.

CMS User Guide, *Certified Independent Dispute Resolution (IDR) Entity Selection Response Web Form* 16, 20 (July 2025), attached as Exhibit 3. All of these attestations were made by Defendants for each Award in this case.

40. The IDR process is a form of baseball-style arbitration. After the CIDRE is selected, the provider and health plan each submit a "blind" offer with supporting information. 42 U.S.C. § 300gg-111(c)(5)(B).

41. The CIDRE must, taking into account the considerations set forth in 42 U.S.C. § 300gg-111(c)(5)(C), "select one of the offers submitted . . . to be the amount of payment for such item or service" and notify the provider and health plan of the determination and award. *Id.* § 300gg-111(c)(5)(A).

42. When the CIDRE selects the provider's offer, the health plan has 30 days from the date of the award to pay the additional reimbursement due the provider.

> The total plan or coverage payment required . . . **shall be made directly** to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made.

42 U.S.C. § 300gg-111(c)(6) (emphasis added).

43. Before a dispute may proceed to a payment determination, the certified IDR entity must review the dispute and determine that the items or services at issue are qualified IDR items or services eligible for the Federal IDR process. If the certified IDR entity determines that a dispute is ineligible, the dispute is closed without a payment determination. Accordingly, by proceeding to payment determinations and issuing the Awards, the CIDREs necessarily determined that each dispute underlying the Awards was eligible for the Federal IDR process.

### C. The Final and Binding Nature of IDR Awards

44. Congress expressly provided that an IDR Award "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I).

45. Congress also limited judicial review of IDR determinations, providing that an award "shall not be subject to judicial review, except" on the narrow grounds identified in 9 U.S.C. § 10(a). 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

46. The permitted grounds are corruption or fraud, evident partiality, prejudicial misconduct, or exceeding arbitral powers. 9 U.S.C. § 10(a)(1)-(4).

47. The NSA's limitation on judicial review applies to efforts to set aside an Award, contest whether the underlying claim was eligible for the Federal IDR process or otherwise attack the validity or merits of an Award. JPS does not seek judicial review of any aspect of these Awards. It seeks confirmation and entry of judgment upon Awards that are already final and binding. Confirmation requires no review, revision, or reconsideration of the CIDREs' determinations; it gives judicial effect to the payment obligations the NSA has already conclusively established.

48. The NSA impliedly authorizes a prevailing provider to seek judicial confirmation of an unpaid IDR Award. The statute's separate public-enforcement provisions do not displace that judicial remedy because they police regulatory compliance rather than provide the prevailing

provider a means of collecting the Award. The federal administrative complaint process does not give a provider an adjudicative or collection remedy it can invoke to obtain payment. The Department of Labor may investigate compliance by the Employee Retirement Income Security Act of 1974 ("ERISA") plans and bring an action for injunctive or other appropriate equitable relief. 29 U.S.C. §§ 1132(a)(5), 1134(a). The Internal Revenue Code imposes an excise tax for a group health plan's failure to satisfy applicable statutory requirements. 26 U.S.C. § 4980D. And HHS, when it has enforcement jurisdiction over an issuer or non-federal governmental plan, may investigate suspected noncompliance and impose civil monetary penalties payable to CMS. 42 U.S.C. § 300gg-22(b)(2); 45 C.F.R. §§ 150.303, 150.315, 150.465(a). None of those provisions gives JPS the right to obtain an agency order or judgment requiring Anthem to satisfy a particular IDR Award, much less an order or judgment enforceable by JPS. Public enforcement and judicial confirmation serve distinct purposes: the former promotes compliance with federal law; the latter enables the prevailing provider to collect the amount already conclusively determined to be due.

49. The practical operation of the complaint process confirms this limitation. In complaints concerning unpaid IDR Awards, DOL reported that, after repeated outreach, the payor provided neither confirmation of payment nor documentation of compliance. DOL therefore "exhausted all avenues for informal resolution" and closed its review because the payor failed to respond—while expressly preserving the provider's "other available options or legal remedies." *Guardian Flight v. Aetna*, No. 3:24-cv-00680-MPS, ECF No. 388-1 at 5, 7 (D. Conn. June 3, 2026). Thus, the complaint process may end before the agency determines whether an IDR Award was paid, much less compels payment.

50. Without judicial enforcement, a payor may refuse to satisfy a final and binding IDR Award, disregard the agencies' informal outreach, and leave the prevailing provider without the

payment Congress mandated. That result cannot be reconciled with Congress's commands that the Award is "binding" and that the payor "shall" pay the amount determined within 30 days. Judicial confirmation does not review or revise the Award; it gives effect to the already-binding Award by converting it into an enforceable judgment.

### D. JPS's Awards and Defendants' Repeated Nonpayment

51. JPS seeks payment of the amounts due from Defendants under the following IDR Awards, which total $698,000 before credit for payments already made (Ex. 1):

| IDR Number | Award Date | Award Amount | Claim Number | CIDRE |
|---|---|---|---|---|
| DISP-3015179 | 5/27/2025 | $33,500.00 | 2025009CY6488 | iMPROve Health |
| DISP-2971848 | 5/30/2025 | $61,875.00 | 2025009CY7689 | Federal Hearings & Appeals Serv. |
| DISP-3014756 | 6/16/2025 | $24,000.00 | 2025009CZ1016 | Provider Resources, Inc. |
| DISP-3343372 | 7/14/2025 | $15,000.00 | 2025052EQ9620 | Maximus Federal Services, Inc. |
| DISP-4079631 | 11/5/2025 | $19,500.00 | 2025169DI1054 | Maximus Federal Services, Inc. |
| DISP-4296835 | 11/7/2025 | $5,000.00 | 2025195EF2266 | Maximus Federal Services, Inc. |
| DISP-4338323 | 11/14/2025 | $12,000.00 | 2025093EB6424 | National Medical Reviews, Inc. |
| DISP-4741676 | 1/15/2026 | $43,500.00 | 2025258CB2501 | Medical Evaluators of Texas |
| DISP-4826777 | 1/28/2026 | $43,500.00 | 2025258CB1257 | Provider Resources, Inc. |
| DISP-4882738 | 2/5/2026 | $17,900.00 | 2025258EE3740 | MCMC Services, LLC |
| DISP-4679053 | 3/9/2026 | $21,750.00 | 2025252CF4924 | Provider Resources, Inc. |
| DISP-4785292 | 3/24/2026 | $16,600.00 | 2025258EG6965 | Federal Hearings & Appeals Serv. |
| DISP-5467029 | 3/31/2026 | $9,875.00 | 2025323EP9749 | MCMC Services, LLC |
| DISP-5504147 | 4/10/2026 | $28,700.00 | 2025336EY4601 | ProPeer Resources, LLC |
| DISP-5079062 | 4/20/2026 | $5,300.00 | 2025287EQ1940 | Network Medical Review Co. |
| DISP-5805650 | 5/6/2026 | $43,500.00 | 2025349EN4824 | Medical Evaluators of Texas |
| DISP-5401048 | 5/13/2026 | $44,000.00 | 2025321EI8252 | Network Medical Review Co. |
| DISP-5757391 | 5/20/2026 | $32,500.00 | 2025357ET7361 | C2C Innovative Solutions, Inc. |
| DISP-5805715 | 5/21/2026 | $87,000.00 | 2025349EN5676 | C2C Innovative Solutions, Inc. |
| DISP-5805438 | 5/22/2026 | $43,500.00 | 2025349EN4785 | C2C Innovative Solutions, Inc. |
| DISP-5805886 | 5/27/2026 | $36,500.00 | 2025349EN5676 | C2C Innovative Solutions, Inc. |
| DISP-5790439 | 5/29/2026 | $33,000.00 | 2026009EC6132 | C2C Innovative Solutions, Inc. |
| DISP-5900758 | 6/4/2026 | $20,000.00 | 2025347BR7682 | Network Medical Review Co. |

52. The 23 Awards were issued over more than a year by ten different CIDREs. Defendants' nonpayment therefore is not attributable to one Award, one CIDRE, or an isolated error; it is a recurring pattern across independent proceedings and decisionmakers.

53. For each Award, JPS furnished covered medical services to members, beneficiaries, participants, or enrollees of health plans or health insurance coverage issued, administered, sponsored, or insured by Defendants.

54. The medical services at issue were covered services eligible for the Federal IDR process because they were furnished by an out-of-network provider at participating health care facilities, the notice-and-consent exception did not apply, and no specified State law determined the out-of-network rate.

55. JPS engaged Cohen Howard Revenue Management Solutions, a Cohen Howard, LLP Law Firm Affiliate ("CHRMS"), to submit claims and administer open negotiations and IDR proceedings on JPS's behalf.

56. After JPS furnished the medical services, CHRMS submitted claims to Defendants. Defendants made initial payments that JPS disputed as inadequate.

57. JPS was prohibited by the NSA from balance billing patients for any amount above the cost-sharing amounts permitted by federal law. JPS did not seek to shift the consequences of Defendants' nonpayment to the patients and instead was required to rely on the statutory process Congress created for resolving payment disputes between providers and plans or issuers.

58. JPS seeks to enforce its own direct statutory right to receive payment of the IDR Awards. The NSA requires payment of the amount determined through IDR to be made directly to the nonparticipating provider, and each Award was issued in JPS's favor.

59. For each Award, CHRMS initiated an IDR proceeding against Defendants.

60. In each IDR proceeding, Defendants attested that they would pay "the outstanding amount (if any) of the out-of-network rate that is my responsibility as determined by the certified IDR entity" and that they understood "the final payment determination made by the certified IDR

entity is binding upon the parties and not subject to judicial review except under certain limited circumstances." Ex. 3 at 16, 20.

61. For each Award, the CIDRE issued a final payment determination fixing the amount payable to JPS.

62. In each IDR proceeding, Defendants received notice of initiation, participated, made the attestations described above, and had the opportunity to raise any contention that the items or services were ineligible for the Federal IDR process. In no proceeding did Defendants obtain an ineligibility determination or otherwise prevent the issuance of a final, binding Award.

63. For each Award, more than 30 days have elapsed since its issuance, yet Defendants have failed and refused to pay the outstanding amount due as required by 42 U.S.C. § 300gg-111(c)(6).

64. Even after the Awards became overdue and CHRMS elevated the issue to Elevance, Defendants did not pay the outstanding balances.

65. No Award has been vacated, modified, set aside, or stayed on any ground permitted by 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) and 9 U.S.C. § 10(a)(1)-(4), and, on information and belief, no Defendant has filed an action or motion seeking such relief.

66. Defendants owe JPS the outstanding amount due under each Award, exclusive of interest, costs, attorneys' fees, and other recoverable damages.

67. Defendants' refusal to pay the Awards has deprived JPS of funds that the NSA required Defendants to pay, forced JPS to hire counsel to pursue the amounts due, caused JPS to incur collection and enforcement expenses, impaired JPS's cash flow, and resulted in additional damages in an amount to be proven at trial.

## CAUSE OF ACTION

### Enforcement of Final and Binding IDR Awards Under the NSA

68. JPS repeats and realleges the allegations above as if fully set forth herein.

69. Under the NSA, the Awards "shall be binding upon the parties involved" and payment "shall be made . . . not later than 30 days after the date on which such determination is made." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), (c)(6).

70. The NSA impliedly authorizes a private right of action to convert a binding Award to a judgment if the obligated party does not comply with its statutory payment obligation.

71. This is a narrow confirmation-and-enforcement remedy, not an action seeking review of the Awards.

72. JPS has a private right of action against Defendants for payment due under the Awards at issue in this case.

73. This action does not seek judicial review of the Awards or the merits of the underlying payment disputes. It seeks confirmation and enforcement of the Awards, recovery of the outstanding Award balances, and all damages and other relief available under applicable law arising from Defendants' failure to pay.

74. For each Award, JPS is the prevailing provider and the party expressly identified as entitled to payment; Defendants are the parties obligated to pay; the amount due was fixed through the federal IDR process; and the statutory payment deadline has expired.

75. The NSA thus requires Defendants to pay JPS the outstanding amount due under the Awards.

76. Defendants' failure to pay violates the NSA and entitles JPS to judicial enforcement of the binding Awards.

77. Under the NSA, JPS is entitled to judgment confirming the binding Awards, enforcing them against Defendants, and awarding JPS the balances owed, plus prejudgment and postjudgment interest, costs, attorneys' fees to the extent permitted by law, and all other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, JPS respectfully requests that the Court enter judgment in its favor and against Defendants and grant the following relief:

a. Order Defendants to comply with the Awards as required by the NSA;

b. Confirm the Awards;

c. Enter judgment in favor of JPS and against Defendants in the aggregate amount of $698,000, less any payments made to date;

d. Order Defendants to make immediate payment to JPS of the outstanding amount due under the Awards;

e. Award JPS all damages caused by Defendants' failure to pay the Awards, in an amount to be proven at trial;

f. Award prejudgment and postjudgment interest at the highest rate permitted by law;

g. Award all attorneys' fees, costs, and expenses recoverable by statute or other applicable law; and

h. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

JPS demands a trial by jury on all claims and issues so triable.

Dated: September 8, 2026

Respectfully submitted,

/s/ Sara K. Bugbee

Sara K. Bugbee (VA Bar No. 35924)
The Federal Health Law Group
17 E 96th Street, Suite 2D, New York, NY 10128
Direct: 540-986-6878
sara.bugbee@ushlg.com

Marc S. Raspanti (*pro hac vice* forthcoming)
Joshua D. Hill (*pro hac vice* forthcoming)
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
1818 Market St., Suite 3402, Philadelphia, PA 19103
Office: (215) 988-1433; Fax: (215) 754-5191
msr@pietragallo.com
jdh@pietragallo.com

*Counsel for Jablonka Plastic Surgery, LLC*